[Civ. No. 63226. Second Dist., Div. One. Oct. 28, 1982.]

12319 CORPORATION, Plaintiff and Appellant, v.
BUSINESS LICENSE COMMISSION OF THE COUNTY OF
LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Kaplan & Novodor and Joshua Kaplan for Plaintiff and Appellant.

John H. Larsen, County Counsel, and Lester J. Tolnai, Deputy County Counsel, for Defendants and Respondents.

58

## Opinion

## SPENCER, P. J.—

### Introduction

Petitioner appeals from a judgment denying a petition for writ of mandamus and/or prohibition and/or administrative mandamus.

### Statement of Facts

Petitioners are the owners and operators of the Starwood nightclub, located within the County of Los Angeles, operating and maintaining a building and premises in which food, beverages and entertainment are provided for the incidental comfort of its patrons. The average monthly attendance at the Starwood approximates 15,000 patrons, many of whom are minors.

Since the Starwood began operations in 1972, the petitioners have taken measures to soundproof the Starwood's premises, posted warnings and issued announcements requesting patrons and staff to demonstrate concern for the peace and welfare of the surrounding community, and retained employees for the purpose of addressing the community's litter problem. Petitioners also employed a private security staff to patrol the surrounding neighborhood; however, this effort was curtailed by the Los Angeles County Sheriff's Department due to its interference with that department's services.

Despite these efforts, since 1978, residents in the vicinity of the Starwood have incurred damage to their homes and vehicles and have been subject to disturbances created by individuals observed going to and leaving the Starwood. Neighbors reported loud noise and boisterous conduct, litter, unruly crowds, and trepass in the form of patrons of the Starwood urinating, defecating, fornicating, and partaking of illegal and dangerous drugs on their property, as well as thefts, fights, and illegal parking. Residents have observed patrons of the Starwood consuming illegal drugs in the Starwood parking lot and employees of the Starwood cautioning patrons to conceal drugs. In 1978, 148 residents of the immediate neighborhood signed petitions requesting that official action be taken against the Starwood.

Surveys, logs, and arrest reports kept by the Los Angeles County Sheriff's Department indicate that the number of incidents which required a police response was significantly higher than that required by similar types of nightclubs. Recorded incidents included arrests for possession of drugs, assault with a deadly weapon, attempted rape, and loitering. Results of a survey taken during the seven-month period between January 1, 1978, and July 31, 1978, for

the purpose of determining the validity of citizen's complaints, revealed 389 complaints and patrol deputy observations and 134 arrests. During the course of two days in July 1978, 1,311 police hours were consumed in connection with unruly mobs at the Starwood.

In 1975, petitioner pled guilty to an accusation of operating the Starwood after hours. On other occasions, guilty pleas were entered and fines assessed for sales of alcoholic beverages to minors.

On two occasions, the Department of Building and Safety of the County of Los Angeles issued stop orders to petitioner after discovering construction projects in progress on the premises absent valid building permits.

In July of 1978, petitioner sold approximately 700 tickets for a concert to be held in the Starwood facilities having a posted occupancy limit of 399 persons. Due to overcrowding on the night of the concert, petitioner was cited by the Los Angeles County Fire Department and subsequently pled guilty to a violation of the Los Angeles Fire Code, section 26-112 A and B.

The county fire department issued an additional citation for overcrowding on October 10, 1978, when the total occupancy of the Starwood exceeded its posted limits by approximately 10 percent. Petitioner pled nolo contendere to the charge.

PROCEDURAL FACTS

On January 2, 1979, the Sheriff of the County of Los Angeles filed an accusation against petitioner, Starwood, with respondent Business License Commission of the County of Los Angeles (Business License Commission) seeking revocation of petitioner's business licenses.

Following hearings held on various dates in 1979 and 1980 before the Business License Commission, petitioner's entertainment, dance, billiard room, public eatery and coin game licenses were revoked by a decision dated February 28, 1980.

Respondent License Appeals Board of the County of Los Angeles (License Appeals Board) affirmed the decision of the Business License Commission on October 1, 1980, and denied petitioner's motion for disqualification of the License Appeals Board on the constitutional grounds of due process and conflict of interest.

A stay of the operative effect of the revocation, denied by the administrative bodies but subsequently granted by the superior court on March 17, 1980, re-

mained effective until January 21, 1981. At that time, the superior court dissolved the stay order and denied petitioner's request for a writ of mandamus and/or prohibition and/or administrative mandamus.

CONTENTIONS

I

For the following reasons, petitioner avers that the administrative and judicial proceedings were infected by political pressure, bias, and a denial of fairness contravening the principle of due process basic to the United States and California Constitutions:

a. Sections 107 and 108 of Los Angeles County Ordinance No. 5860, are unconstitutional both on their face and as applied herein;

b. The appeal before the License Appeals Board, a member of which was appointed by Supervisor Edelman, was unfair where the record of the Business License Commission hearing contained a letter written by Supervisor Edelman urging revocation of petitioner's business licenses.

c. Legal counsel for the Business License Commission forfeited his role of neutral adviser to the board when he assisted the prosecution by laying a foundation for the introduction of Supervisor Edelman's letter into evidence.

II

Petitioner asserts that the evidence was insufficient to support revocation of its various business licenses, including his entertainment license which falls under the aegis of the First Amendment of the United States Constitution.

DISCUSSION

I

■ A. Petitioner asserts that Los Angeles County Ordinance No. 5860, sections 107[1] and 108[2] are unconstitutional violations of the due process clauses of

---

[1]Los Angeles County Ordinance No. 5860, section 107 provides: "LICENSE APPEALS BOARD. The License Appeals Board is hereby created. The License Appeals Board shall consist of:
"(a) One member designated by the Probation Officer.
"(b) One member designated by the County Counsel.
"(c) The Supervisor's chief deputy of each district."

[2]Section 108 of Los Angeles County Ordinance No. 5860 provides in pertinent part: "CHIEF DEPUTIES. Only one Supervisor's chief deputy shall sit on the License Appeals Board at one time. In each case the Supervisor's chief deputy of the Supervisorial district in which is

the United States and California Constitutions, both on their face and as applied herein. We cannot agree.

Sections 107 and 108 provide that the License Appeals Board shall include one member designated by the office of the Los Angeles County Counsel and one member who is the supervisor's chief deputy of the district within which the principal place of business of the appellant is located. Petitioner argues that the said sections countenance a prima facie case of bias and conflict of interest on the part of the Los Angeles County Counsel's office.

Petitioner bases its contention on the participation of the county counsel's office in three distinct roles during the hearing before the Business License Commission and the License Appeals Board: counsel representing the prosecution before the Business License Commission, legal adviser to the Business License Commission, and designator of a member of the License Appeals Board.

Petitioner fails to offer any facts supporting its assertion of bias and prejudice or his suggestion that the various functions performed by the county counsel's office were not properly insulated from one another.

California has recently adopted the federal approach to the issue of combined functions. "The federal position on the issue is that due process is not violated by the combination of investigative and adjudicative functions unless the *facts* of a case show foreclosure of fairness as a practical or legal matter." (Italics added.) (*Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648, 658 [163 Cal.Rptr. 831].) Without specific facts to support petitioner's allegations of unfairness, this court is unable to agree with its contentions.

Furthermore, although sections 107 and 108 provide that the county counsel does have the authority to appoint one member of the License Appeals Board, there is no requirement that the appointee be a member of that office. The record fails to indicate that the county counsel's appointee to the License Appeals Board was a member of that office or that, if he was, he was insufficiently insulated from the deputy county counsel representing the sheriff's department, the complaining agency herein.

Petitioner also faults the appearance of Deputy County Counsel Tolnai before the License Appeals Board as an advocate against petitioner when Mr. Tolnai had previously represented the Business License Commission below in a neutral role. Contrary to petitioner's allegation of a conflict of interest, we find no impropriety. Rather, we find consistency in Mr. Tolnai's role. His duty was to render neutral legal assistance to the Business License Commission below

located the principal place of business of the business to be licensed or in which the dance will be held shall sit."

and then to seek to uphold their decision before the License Appeals Board, regardless of whether that decision was for or against the petitioner.

■ B. A letter written by Supervisor Edelman supporting revocation of petitioner's business licenses was read during the revocation hearings before the Business License Commission and became a part of the record reviewed by the License Appeals Board. Petitioner maintains that it was denied basic due process because a member of the License Appeals Board, appointed by Supervisor Edelman pursuant to County Ordinance No. 5860, sections 107 and 108, was inherently biased in favor of the supervisor's recommendation.

While Ordinance No. 5860 does provide that the supervisor's chief deputy of the supervisorial district in which the business is licensed shall be a member of the License Appeals Board, the wisdom of this designation is apparent. As a member of the supervisor's staff, the chief deputy is aware of the events in and the needs of his particular supervisorial district. As a result of his knowledge, he is singularly qualified to represent those needs. Therefore, petitioner's allegation that the supervisor's chief deputy may have had prior knowledge with respect to complaints concerning the Starwood and did have knowledge of the supervisor's letter to the Business License Commission is well founded. However, this does not establish grounds for disqualification of the panel. "[N]either prior knowledge of the factual background which bears on a decision nor prehearing expressions of opinions on the result disqualifies an administrative body from acting on a matter before it." (*Applebaum* v. *Board of Directors, supra,* 104 Cal.App.3d 648, 657.) Such knowledge alone is insufficient to disqualify the Board by reason of administrative bias.

Petitioner properly cites *Berkshire Employees Ass'n etc.* v. *National Labor R. Bd.* (3d Cir. 1941) 121 F.2d 235 for the proposition that all members of a tribunal should be impartial; however, petitioner has not convinced this court that the members of the License Appeals Board lacked impartiality. Supervisor Edelman's letter represented only a small fraction of the record reviewed by the License Appeals Board. The opinion expressed in that letter was based on information available to the supervisor prior to the Business License Commission hearings and was not necessarily coextensive with the remainder of the evidence presented. The record of the hearings below contained more than 3,000 pages of testimony, including cross-examination of witnesses and arguments opposing the revocation of the Starwood's business licenses. There is nothing before us which demonstrates that either Supervisor Edelman's expression of opinion or prior knowledge caused his chief deputy to irrevocably close his mind to the contents of the hearing record (*Trade Comm'n.* v. *Cement Institute* (1948) 333 U.S. 683, 701 [92 L.Ed. 1010, 1034, 68 S.Ct. 793]) or that the record before him was not the basis of his decision or that he brought pressure to bear on the decision of any other member of the board.

The cases cited by petitioner to establish administrative bias are readily distinguishable. Petitioner cites *Tumey* v. *Ohio* (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243] for the proposition that no man who has an interest in the outcome of a case may be permitted to try that case. While we are in accord with that proposition, we note that *Tumey* involved actual bias where a judge had a pecuniary interest in the outcome of the trial. In the instant case, there is no issue of pecuniary interest, nor was Supervisor Edelman "trying" the case.

Petitioner also draws this court's attention to *Transworld Airlines* v. *Civil Aeronautics Board* (D.C.Cir. 1958) 254 F.2d 90. There, an investigator for the Post Office Department joined the Civil Aeronautics Board which decided a matter in which the investigator had previously filed a brief. The court found a violation of due process and disqualified the former investigator. In *Transworld,* as in *Tumey,* the violation of due process resulted from substantiated bias on the part of the judge. As stated above, petitioner has asserted no facts establishing similar bias on the part of the License Appeals Board commissioners.

Additional cases cited by petitioner suffer from the same flaw. *Amos Treat & Co.* v. *Securities and Exchange Commission* (D.C.Cir. 1962) 306 F.2d 260 involved an administrative agency commissioner who participated in adjudicating a matter brought to the attention of that agency when he had been an investigator for them and had reported information on which the charges were based. *State* v. *Kelly* (1960) 145 W.Va. 70 [112 S.E.2d 641] also deals with personal bias and is not supportive of petitioner's position.

In the instant case, there is no evidence to establish either that county counsel's various roles in the proceedings or Supervisor Edelman's letter reviewed by his designatee on the board foreclosed a fair decision on the merits. Mere knowledge of events or opinion, absent a stake in the outcome, does not evidence a preconceived mental state analogous to that possessed by officials in the above cited cases. Such knowledge does not preclude impartiality on the part of a supervisor's chief deputy whose responsibility is not only to the residents of a particular supervisorial district, but to the business licensees of that district as well.

Petitioner also characterizes the chief deputy as serving on the License Appeals Board at the pleasure of Supervisor Edelman. We must note that the authorizing ordinance makes no reference to the supervisor's power to rescind the appointment, nor is there any evidence that the chief deputy's continued presence on the License Appeals Board was contingent upon a particular decision in this case. Therefore, on the record before us it is difficult to perceive the chief deputy as serving at the pleasure of the supervisor.

The only indication of possible bias presented by petitioner is a statement made by a member of the Business License Commission, Ms. Koch, who alleges that Supervisor Edelman's letter deprived the licensee of a fair hearing by exerting "pressure." The allegation is unaccompanied by supporting facts, is conclusional, and affords this court no basis for a finding of prejudice.

■ C. During the course of hearings before the Business License Commission, legal counsel for the commission assisted with the examination of a witness in order to lay a foundation for the introduction of Supervisor Edelman's letter into evidence. Petitioner asserts that such assistance rendered aid to the prosecution and effected a forfeiture of the neutral position held by counsel to the Business License Commission. Once again, we cannot agree.

The total extent of counsel's assistance consisted of inquiring whether the witness was familiar with the supervisor's signature and if so, whether the witness would recognize that signature. Such an occurrence is not inconsistent with the role of a neutral advisor taking action to ensure that the evidence was properly before the commission and does not amount to adoption of the prosecutorial role.

We therefore find no merit in petitioner's various assertions that the ordinances and procedures discussed above resulted in a deprivation of its constitutional guarantees of due process.

II

■ Petitioner also asserts that the evidence was insufficient to support revocation of his various business licenses. We cannot agree.

■ It is well settled that appellate review of the sufficiency of evidence is governed by the substantial evidence rule. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907 [80 Cal.Rptr. 89, 458 P.2d 33]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].) "[T]he power of the appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (Italics original.) (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].) Factual matters are viewed most favorably to the prevailing party (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480]) and conflicts are decided in favor of the respondent. (*Cecka* v. *Beckman & Co.* (1972) 28 Cal.App.3d 5 [104 Cal.Rptr. 374].)

■ Preliminarily, we note that the requirement of obtaining a business license is a valid exercise of police power. (*Burton* v. *Municipal Court* (1968)

68 Cal.2d 684 [68 Cal.Rptr. 721, 441 P.2d 281]; *In re Fuller* (1940) 15 Cal.2d 425 [102 P.2d 321].) Los Angeles County Ordinance No. 5860, a comprehensive licensing scheme regulating activities which are potentially detrimental to the public welfare, was enacted pursuant to the county's general authority under its police power. In accord with that power, the county has broad authority to regulate public places of amusement and entertainment. (*7978 Corporation* v. *Pitchess* (1974) 41 Cal.App.3d 42 [115 Cal.Rptr. 746].) Reasonable regulation may be imposed on an economic enterprise even when an activity of that enterprise falls under the aegis of the First Amendment. (*In re Porterfield* (1946) 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675]; *Tarbox* v. *Board of Supervisors* (1958) 163 Cal.App.2d 373 [329 P.2d 553].)

■ A business license may be revoked as an appropriate means of protecting the public interest. (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64 [101 Cal.Rptr. 768, 496 P.2d 840].) Ordinance No. 5860, section 91[3] expressly advises all parties accepting a license granted under Ordinance No. 5860 that the Business License Commission may hold a public hearing and revoke such license pending a finding of grounds for revocation.

Petitioner was privileged to conduct business under five separate business licenses issued by respondent. While petitioner's entertainment license clearly fell under the aegis of the First Amendment of the United States Constitution, it is equally clear that petitioner's other licenses related to ordinary commerical activities. This court recognizes that constitutional standards require a strict scrutiny for regulation of business activity within the ambit of the First Amendment, however, recognition must also be given to the fact that ordinary commercial activities are not afforded similar protection. (*Burton* v. *Municipal Court, supra,* 68 Cal.2d 684; *Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* 7 Cal.3d 64.)

■ Los Angeles County Ordinance No. 5860, section 91.9[4] sets forth the grounds permitting revocation of business licenses involving First Amendment

---

[3]Los Angeles County Ordinance No. 5860, section 91 states as follows: "RIGHT TO REVOKE. Every license granted under this ordinance or any section thereof is granted and accepted by all parties with the express understanding that the Commission may hold a public hearing, notice of the time and place of which shall be given to the licensee, and that if, after such hearing the Commission finds that any grounds of revocation exist, the Commission may revoke or suspend such license, and that if the facts or conditions constituting the grounds of revocation are an immediate threat to the public peace, health, or safety, the Commission, pending such hearing may suspend such license for not more than sixty days."

[4]Los Angeles County Ordinance No. 5860, section 91.9 provides: "REVOCATION OR SUSPENSION OF LICENSE. ACTIVITIES WHICH MAY INVOLVE FREE SPEECH. After a hearing as provided in Article 9 of Chapter I the Commission may suspend or revoke a license for . . . entertainment . . . if it finds that one or more of the following conditions exist:

"(a) The building, structure, equipment or location of such business does not comply with or fails to meet all of the health, zoning, fire and safety requirements or standards of all the laws of

protected activities. Among the causes justifying revocation of such a license is a judicial determination that the business has failed to comply with fire and safety requirements of the law.

Respondent's revocation of petitioner's entertainment license was therefore justified following petitioner's guilty plea to a violation of the Los Angeles County Fire Code, as a result of overcrowding.

As petitioner's other business licenses are not protected by the First Amendment, different standards apply. Los Angeles County Ordinance No. 5860, section 92[5] sets forth the standards for revocation of licenses involving ordinary commercial activities. Pursuant to that section, respondent may revoke such a license upon a finding that the business has been conducted in a manner contrary to the peace and general welfare of the public, or that the licensee has violated governmental rules relating to the licensee's business.

This court fails to find any abuse of discretion on the part of respondent agency. The record is replete with evidence supporting a finding that the Starwood has been a constant source of pain and anguish to the neighboring community since 1978. Local residents have suffered property damage to their homes and vehicles as well as being subjected to a continuous barrage of noise and boisterous conduct emanating from the Starwood and its patrons.

While the petitioner is not responsible for the actions of patrons while off the Starwood's premises, petitioner is responsible for the areas under its control

---

the State of California or ordinances of the County of Los Angeles applicable to such business operation;

"(b) The licensee, his employee, agent or manager has been convicted in a court of competent jurisdiction of:

"(1) Any violation of any statute, this, or any other ordinance arising from any act performed in the exercise of any rights granted by the license the revocation of which is under consideration, . . ."

[5]Los Angeles County Ordinance 5860, section 92 provides: "REVOCATION OR SUSPENSION OF LICENSE. ACTIVITIES WHICH DO NOT INVOLVE FREE SPEECH. After a hearing as provided in Article 9 of chapter 1 the Commission may suspend or revoke a license . . . if it finds that any licensee, his agent or employee or any person connected or associated with the licensee as partner, director, officer, stockholder, general manager, or person who is exercising managerial authority of or on behalf of the licensee has:

". . . . . . . . . . . . . . . . . . . . . .

"(b) Violated any provision of this or any other ordinance, or of any statute relating to his permitted activity; or

". . . . . . . . . . . . . . . . . . . . . .

"(h) Violated any rule or regulation adopted by any governmental agency relating to the licensee's business; or

". . . . . . . . . . . . . . . . . . . . . .

"(j) Conducted the licensed business in a manner contrary to the peace, health, safety, and the general welfare of the public; or

"(k) Demonstrated that he is unfit to be trusted with the privileges granted by such a license; . . . ."

and for the exacerbation of problems in the surrounding neighborhood resulting from Starwood's policies. The evidence reveals that the petitioner was aware of the use of illegal drugs by patrons of the Starwood while on the Starwood parking lot and incidents of the sale by Starwood employees of alcoholic beverages to minors. One may easily infer that such actions on the part of the Starwood management and employees directly contributed to the disruption of the peace and general welfare of the community caused by patrons of the Starwood on their way to and from that establishment.

Furthermore, additional cause for revocation is evidenced by petitioner's repeated violations of rules and ordinances relating to its business. The two instances of construction on the premises without a valid building permit, the two citations issued by the county fire department for overcrowding, and various other citations for the sale of alcoholic beverages to minors and operating the business after hours are more than sufficient evidence to support revocation of ordinary commercial business licenses pursuant to Los Angeles County Ordinance No. 5860, section 92.

Given the totality of the circumstances, the revocation of the Starwood's licenses meets applicable legal standards. Moreover, were we to conclude that some procedural error had occurred during the Business License Commission or License Appeals Board hearings, that error would be deemed harmless in light of the overwhelming evidence at hand. It is not reasonably probable that the License Appeals Board or the superior court would have reached a different result in the absence of error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also, *Estate of Keith* (1917) 175 Cal. 26, 30 [165 P. 10].)

The judgment is affirmed.

Hanson (Thaxton), J., and Dalsimer, J., concurred.