[No. G042218. Fourth Dist., Div. Three. June 23, 2010.]

MUSA MADAIN, Plaintiff and Appellant, v.
CITY OF STANTON, Defendant and Respondent.

1278

COUNSEL

Roger Jon Diamond for Plaintiff and Appellant.

Ralph D. Hanson, City Attorney; Burke, Williams & Sorensen and Amy E. Hoyt for Defendant and Respondent.

OPINION

**BEDSWORTH, J.**—Musa Madain appeals the denial of his petition for a writ of mandate challenging denial by the City of Stanton (the City) of his application for a permit to operate an adult-oriented cabaret. The City denied

the application on the basis the location selected by Madain was within 300 feet of a planned church. Although Madain challenged the authenticity of the church itself in the proceedings below, he does not do so here. Instead, he argues two things: first, that a church which has merely applied for a permit to operate at a particular location, but whose application has not yet been meaningfully processed, does not qualify for protection as a "planned" church under the City's "sensitive use" ordinance; and second, that the City failed to consider his contention he attempted to file his own permit application prior to the church's application—which would have entitled him to priority under the City's interpretation of its sensitive use ordinance—but was deterred in his effort by city employees.

We conclude the order denying the writ of mandate must be reversed, and the case remanded for further proceedings. City's sensitive use ordinance is not a model of clarity, and the parties' arguments focus primarily on what it *ought* to mean, rather than providing us with any legal authority for what its words actually *do* mean.

We are inclined to agree that the ordinance establishes priority fairly only if interpreted as the City has done in this case—which is that priority, as between a sensitive use (in this case, a church) and a putatively "insensitive" one (Madain's cabaret) would be subject to potential manipulation if, as Madain argues, it were determined based upon when the City chose to commence its *official consideration* of the sensitive use permit application. Such an interpretation might assist Madain in this particular case, but would seem to create uncertainty and beg calamity as a general rule. And regardless of the wisdom of such an interpretation, we are not certain the ordinance before us was written that way.

■ We need not decide that issue, however, because Madain's second contention is persuasive. Even assuming that sensitive use priority is established objectively, by reference to the dates upon which the respective parties chose to file their permit applications, it is obviously incumbent upon the City to give all applicants an *equal* opportunity to do so. The goal is to prevent any manipulation of the process. And Madain offered evidence during the city council's hearing on his appeal from the denial of his permit application that he had attempted to file his permit application prior to the date the church filed its own, but was deterred from doing so by a city employee—thus, specifically raising the inference of manipulation. But the city council made no findings on that point. Because the issue of whether Madain's permit application was presented to, and should have been accepted by, the City prior to the date the church filed its own application was relevant to determining whether the church's application was legitimately *entitled* to priority (even under the City's own interpretation of the sensitive use

ordinance) the city council abused its discretion by failing to address it. We consequently reverse the trial court's order denying the writ of mandate, and remand the case with directions to issue the writ.[1]

## FACTS

On December 2, 2008, Madain filed tenant improvement plans with the City, in connection with a contemplated "adult-cabaret" he proposed to operate at a property on Katella Avenue. The City accepted the plans, but on December 18, 2008, more than two weeks later, the City's planning manager, Omar Dadabhoy, mailed the plans back to Madain with a letter explaining that "as [Madain was] proposing to operate an adult oriented business on the subject property, an adult business application must be submitted and approved prior to plans for tenant improvements."

In response to the letter, Madain filed an "Adult-Oriented Business License Application" on January 6, 2009. By letter dated January 14, 2009, the City notified Madain that his application was denied. According to the letter, the denial was based upon the fact Madain's proposed business location was within 300 feet of a planned "religious institution," and thus was not in compliance with section 20.38.024, subdivision A.1.b. of the Stanton Municipal Code.[2]

On January 23, 2009, Madain appealed the denial of his permit to the city council. And on February 10, 2009, the city council conducted a "de novo hearing"[3] on the matter.

At the hearing, which was transcribed, Madain made several arguments, including the assertion that he had attempted to file his permit application on December 2, 2008, the date he filed his tenant improvement plans, but was

---

[1] Pursuant to Evidence Code sections 459 and 452, subdivision (b), the City has requested we take judicial notice of relevant portions of its municipal code in connection with this appeal. The request is granted.

[2] The City's letter also stated that Madain's application was incomplete, in that (1) it did not include a "proper legal description of the subject property," as required by the Stanton Municipal Code section 5.58.018, subdivision B.2; and (2) it did not include the signature of the property's owner, as required by the Stanton Municipal Code section 5.54.016, subdivision A.4. With regard to the second point, the letter acknowledged that while Madain was not yet the record owner of the property, he was "in the process of purchasing it." The City does not currently rely upon these deficiencies as a basis for denying the application, and consequently we need not consider whether they would constitute a sufficient basis for doing so.

[3] According to the Stanton Municipal Code, an "appeal" from the city manager's denial of a permit to conduct an adult-oriented business requires the city council to conduct a "de novo hearing" of the issue. (Stanton Mun. Code, § 5.54.019.)

deterred by a city employee from doing so. Specifically, Madain explained he had informed the city employee at the front desk that day—a woman—he had both the application and the requisite fee to file along with the plans, but that the woman told him she would take *only* the tenant improvement plans at that time, and that Dadabhoy would look at them and then send a letter or call Madain. Madain claimed after he received Dadabhoy's letter, more than two weeks later, informing him that the tenant improvement plans were being returned to him for lack of a permit application, he informed Dadabhoy of his effort to file the permit at the same time.

Madain also explained to the city council that the application itself would provide further evidence of his intent to file it on the earlier date, because the original date of December 1, 2008, had been simply covered over with white ink, so the document could be re-dated to correspond with the timing of his later filing attempt. He advised the city council that "[i]f you see the application in the bottom, if you peel the, it's like a, it's like a white ink, you know, if you peel it, you will see that application dated [12/1] of 2008 and was ready to be submitted along with the application."

Madain also explained to the city council that Dadabhoy had been aware of his *intent* to open his business at the Katella address for some weeks prior to the December 2, 2008 attempt to file his permit application, as the two men had discussed what steps Madain would need to complete for city approval. Moreover, he pointed to evidence that a city employee had communicated with the church on December 3, 2008, the day after he made his initial attempt at filing his permit application, and the church then quickly filed its own application on December 8, 2008.[4] However, it was not until 10 days after that, on December 18, 2008, that Dadabhoy got around to returning Madain's tenant improvement plans, informing him his project would not proceed until his own permit application was filed. Madain argued these facts gave rise to the inference that city employees had manipulated the events to ensure the church would have the opportunity to file its application first, and thus obtain priority under the sensitive use ordinance.

Dadabhoy also addressed the city council during the hearing. Although he was not present on December 2, 2008, when Madain claims he initially attempted to file his permit application, Dadabhoy nonetheless purported to dispute the claim, explaining to the city council that "[Kelly] Scott [the female employee who dealt with Madain on that date] was not aware of any business license application that . . . Madain wanted to submit, nor did he offer to pay any fees, nor would it have been a complete application, because there was only one piece of paper in his hand and it was not the business

---

[4] According to the record, the church's application was deemed "complete" on December 15, 2008.

license application that the City gives out to applicants." Neither Scott, nor any other city employee with direct knowledge of the December 2, 2008 encounter, offered any evidence before the city council.[5]

Immediately after Dadabhoy finished addressing the city council, it concluded the hearing and "call[ed] for the question." The city council then voted unanimously to reject Madain's appeal. The city council then issued formal written findings in support of its decision, as follows:

"WHEREAS, on January 6, 2009, . . . Madain filed an application for an Adult-Oriented Business License, together with appropriate fees, for a business to be located at 8351 Katella Avenue, Stanton. Pursuant to the application, the intent was to operate and [sic] adult cabaret (no alcoholic beverages served) featuring nude female dancers performing on a stage and operating under the fictitious business name 'Avalon Show Girls'; and,

"WHEREAS, on December 8, 2008, prior to the application of the adult cabaret, an application for a Provisional Use Permit was filed on behalf of the Branches Christian Church, Inc. to establish a storefront church at 8381 Katella Avenue, Unit J (the property line of which would be less than 2 feet from the building proposed to house the adult cabaret); and,

"WHEREAS, on January 14, 2009, the interim City Manager provided written notice to the applicant that the application for the adult cabaret was denied due to the fact that the location was within 300 feet of a planned religious institution and is not in conformance with the standards of Stanton Municipal Code section 20.38.024; and,

"WHEREAS, on January 26, 2009, the attorney for the applicant timely requested a hearing before the City Council to consider an appeal of the denial of the application; and,

"WHEREAS, on February 10, 2009, the City Council of the City of Stanton conducted a public hearing concerning the appeal; and

"WHEREAS, the City Council has carefully considered all pertinent testimony and information contained in the Staff report prepared for this application as presented at the public hearing; and

"WHEREAS, all legal prerequisites have occurred prior to adoption of this resolution.

---

[5] Madain asserts in his brief that the City "*refused to produce* . . . Scott for either her views or for cross examination purposes" (italics added), but he omits any citation to the record suggesting he ever requested that the City produce Scott for questioning.

"NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF STANTON DOES RESOLVE, DETERMINE, FIND, AND ORDER AS FOLLOWS:

"SECTION 1: The City Council finds that the above recitations are true and correct and, accordingly, are incorporated as a material of this Resolution.

"SECTION 2: On the basis of substantial evidence on the record, including, but not limited to, the written and oral staff report and testimony at the public hearing, the City Council finds as follows:

"A. Stanton Municipal Code section 20.38.024 requires that adult-oriented businesses shall not be located within 300 feet of a sensitive use, including a church.

"B. The Branches Christian Church is a legitimate and operating religious institution and the application was not filed simply to block the adult-oriented business license application.

"C. The application of the Branches Christian Church was filed on December 8, 2008, almost <u>one month prior</u> to the adult use application.

"D. The building of the proposed adult cabaret would be located 2 feet from the property line of the site where the Church is to be located. Accordingly, the subject adult-oriented business would be in violation of Stanton Municipal Code section 20.38.024."

Madain filed an expedited petitioned for writ of mandate in the superior court, pursuant to Code of Civil Procedure section 1094.8. He argued that City's sensitive use ordinance, which prohibited the operation of an adult-oriented business within 300 feet of (among other things) any "church, chapel, [or] religious institution . . . which is zoned, planned or otherwise designated for such use by city action" (Stanton Mun. Code, § 20.38.024, subd. A.1.b.), had been improperly applied in this case, because the church in question would not have qualified for such protection until the City had *taken action to approve* its permit application, which had not occurred as of the time Madain's permit application was rejected. He also argued the city council erroneously failed to consider and make findings relevant to his assertion he had been unjustifiably deterred by a city employee when he first attempted to file his application, and he had thus been unfairly deprived of the opportunity to establish priority over the church. After considering the contentions of both sides, the court denied the writ.

In its ruling, the court included a lengthy explanation of its reasons for rejecting Madain's narrow interpretation of the sensitive use protection: "There is no dispute that the City may use its police powers to regulate adult-oriented business through zoning and licensing requirements. *12319 [Corp.] v. Business License [Com.]* (1982) 137 Cal.App.3d 54, 64 [186 Cal.Rptr. 726]. Petitioner contends that the City misapplied the Code and manipulated the situation to benefit the church to the prejudice of Petitioner by preventing him from operating his business. [¶] The question to be answered is whether the filing of the church's application on 12-8-08, and the City's proceeding with the process for the eventual grant of the provisional use permit on 2-17-09 constituted a 'city action of zoning, planning, or otherwise designating of a sensitive use place,' and if so, did that action take place prior to Petitioner submitting his application. Here, Petitioner contends that his application was submitted before any city action of planning the church took place, thereby giving his application first priority and entitlement. [¶] Petitioner also contends that the church's submission of its application was not a 'city action.' He asserts that the first time city action occurred was when the City approved the provisional use permit on 2-17-09. Accordingly, he argues that because there was no city action taken to zone, plan or designate the church until 2-17-09, his own priority was established when he submitted his business license application on 1-6-09. Following this course of logic, Petitioner asserts that the City had no basis to reject his application on 2-10-09. [¶] Petitioner cites no legal authority for his conclusion that there was no city action as to the church until it granted the use permit on 2-17-09. He cites no legal definition for what constitutes 'city action,' or that these words in the Code should not be given effect with the usual, ordinary import of the language employed in framing the Code. See *Davidson v. County of San Diego* (1996) 49 Cal.App.4th 639, 648 [56 Cal.Rptr.2d 617] (citing *Russ Bldg. Partnership v. City and County of San Francisco* (1988) 44 Cal.3d 839 [244 Cal.Rptr. 682, 750 P.2d 324]). In its plain meaning, 'City action' means any action taken by a city agency in the course of government business. [¶] Certainly, for the date the application was filed by the church on 12-8-08, to the date of actual approval, the City took steps along the way to process, review and approve the completeness of the application; and process, review and approve the initial study environmental information form. Indeed, the City deemed the application was complete for processing on 12-15-08, and set the matter on the agenda with the Development Review Committee for 12-23-08. The process of reviewing, analyzing, and moving the application forward to grant stage could only occur through action by the City. [¶] The next question to be answered is whether the City's action of processing the application prior to the actual approval on 2-17-09 constituted 'planning.' Petitioner cites no authority that the term should be defined other than in its ordinary meaning. Webster's defines 'planned' as to make a 'drawing or diagram showing the arrangement . . . or a structure' or 'to have in mind as a

project or a purpose.' Webster's New World Dictionary, Third College Edition. [¶] In proceeding with the submitted application by processing it through the bureaucratic channels to reach the ultimate disposition, the City had in mind a project or a purpose for their actions, i.e., to either grant or deny the application. In short, a plan was in effect to bring resolution to the application. Once the application was submitted and accepted by the City for processing, the location of the church was being 'planned' by the City. Petitioner offers no evidence to dispute that the City did not engage in any actions during the planning stage to bring about the final decision to approve."

However, with respect to Madain's contention the City failed to make findings relevant to his contention he had attempted to file his application on December 2, 2008, the court offered no analysis. Instead, it declared that Madain's "ancillary arguments, including that the City conspired to prevent [him] from submitting his application before that of the church; that the church was not in existence at the time it applied; and that the City did not address the issues raised by [Madain] at the hearing as part of their findings of fact, *are irrelevant* to the core issue before this Court." (Italics added.)

I

■ Madain's writ of mandate petition, challenging an adjudicatory decision of the city council, is governed by Code of Civil Procedure section 1094.5, which specifies the procedures applicable to a petition brought for "the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer . . . ." (Code Civ. Proc., § 1094.5, subd. (a); see *Sierra Club v. City of Hayward* (1981) 28 Cal.3d 840, 849 [171 Cal.Rptr. 619, 623 P.2d 180] [characterizing as "classically adjudicatory in nature" a proceeding in which "the landowner must initiate the proceedings by filing a petition . . . ; the council sits as arbiter, hearing evidence from proponents and opponents; and in every case the ultimate decision, unlike most zoning and annexation decisions, directly affects only one parcel"].)

Consequently, the issues to be determined in connection with such a writ are whether the city council "has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [council] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

Madain argues the city council abused its discretion in two ways: first, by misinterpreting its sensitive use ordinance to give the church's permit application priority based upon the date it *was filed*; and second, by failing to consider and make findings relevant to his contention that he had been deterred from filing his own permit application (and thus establishing priority) when he first attempted to do so. Both of these contentions raise pure issues of law, and thus are to be reviewed de novo.[6] (*Scottish Rite Cathedral Assn. of Los Angeles v. City of Los Angeles* (2007) 156 Cal.App.4th 108, 115 [67 Cal.Rptr.3d 207] [mandate action alleging city council failed to comply with religious protection statutes]; *Sierra Club v. City of Hayward, supra,* 28 Cal.3d at p. 849, fn. 2 [mandate action alleging city council failed to make findings required by law].)

## II

Madain's first argument is that both the city council and the trial court erred in construing the City's sensitive use ordinance as providing protection to a church from the moment it *applies for* a permit to operate at a particular location.

The ordinance in question, Stanton Municipal Code section 20.38.024, provides in pertinent part: "An adult-oriented business shall not be located within [300] feet of a sensitive use," including "[a]ny church, chapel, religious institution, or similar place of worship which is *zoned, planned or otherwise designated for such use by city action.*" (Stanton Mun. Code, § 20.38.024, subd. A.1.b., italics added.) Madain argues, as he did in the trial court, that the italicized language cannot reasonably be construed as protecting a church from the moment it applies for a permit, because at that point only the church—and not the City itself—has taken *action* to zone, plan or otherwise designate the location for that protected use.

In rejecting this argument, the trial court reasoned that "[t]he question to be answered is whether the filing of the church's application on 12-8-08, and the City's proceeding with the process for the eventual grant of the provisional use permit on 2-17-09 constituted a 'city action of zoning, planning, or otherwise designating of a sensitive use place,' . . . . [¶] . . . [¶] Petitioner cites no legal authority for his conclusion that there was no city action as to

---

[6] We acknowledge that the administrative record does reflect a dispute of fact on the ultimate issue of whether Madain actually attempted to file his permit application on December 2, 2008, as he claims, and that the City denies that any such attempt occurred on that date. However, we are not called upon to resolve that factual dispute in this appeal. Instead, our inquiry focuses on (1) whether *the city council* was required to resolve that issue in light of Madain's contentions; and (2) whether its written decision can be construed as resolving it. These are issues of law.

the church until it granted the use permit on 2-17-09. . . . [¶] Certainly, [from] the date the application was filed by the church on 12-8-08, to the date of actual approval, the City took steps along the way to process, review and approve the completeness of the application . . . . The process of reviewing, analyzing, and moving the application forward to grant stage could only occur through action by the City."

However, Madain argues the date upon which the City merely accepts the application is not necessarily the same as the date it begins "reviewing, analyzing, and moving the application forward to grant stage." In his view, although the *submission* of the application would qualify as an action by *the applicant*, the mere receipt of that document would not constitute an *action* by the City. He further suggests the City's receipt of a permit application, even if construed as an "action" by the City, would not necessarily qualify as an act of zoning or planning, or reflect the City's own (as opposed to the applicant's) *designation* of a church location. Thus, Madain argues the priority established by the sensitive use ordinance does not benefit the church until the City has at least taken some affirmative steps to approve the requested permit.

However, the City responds that courts must " 'give effect to statutes according to the usual, ordinary import of the language employed in framing them.' " (*Russ Bldg. Partnership v. City and County of San Francisco, supra*, 44 Cal.3d at p. 847.) And the ordinary meaning of "planned" is "intended" or "projected." (Webster's 3d New Internat. Dict. (1993) p. 1731, capitalization omitted.) Thus, the City's position is that it begins its *projection* of a church usage for a particular site from the time it accepts a church's application for permission to operate at that site. That acceptance is the first official *act* in the City's processing of the permit. However, "city planning" is a distinct undertaking, and indeed there are those who practice it as a profession. Thus, it is not clear we can fairly presume that "planned" in the context of this ordinance means the same thing as it would in the sentence, "We have planned a party."

At oral argument, we asked the parties to submit additional briefing on the meaning of the words in the ordinance—specifically regarding the meaning of "planned" in this context. They were unable to identify any significant authority.

Of course, the City's interpretation of the ordinance, establishing priority based upon the date a permit application is filed, is attractive because it creates the most objective, and thus most equitable, rule. In the trial court, Madain relied upon *Perrine v. Municipal Court* (1971) 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648], which specifies that ordinances which govern

permitting for First Amendment activity "must be specific, must be objective, and should not give the licensing officials discretion to decide how to apply its ordinance, when to grant, when to deny."

We agree that *Perrine*'s point is well taken. However, Madain's own interpretation of the sensitive use ordinance seems inconsistent with the *Perrine* rule, as it would give the City just the sort of discretionary power *Perrine* warns against. According to Madain, the City doesn't "act" until it has approved its permit application, or at a minimum has taken some substantial step toward doing so—such as holding a hearing to consider its merits. But such operation would give the City the power to freely manipulate the ordinance's protections, by simply delaying its affirmative *consideration* of a party's permit application. Such discretion, affecting, as here, the rights of a church, would also implicate the First Amendment.

Of course, Madain assumes no city would want to engage in such machinations so as to disadvantage a church—his theory is that while cities generally resist permitting of adult entertainment businesses, and thus should not be allowed to exercise discretion in doing so, they would never do such a thing to a church. But that's not the point of the Supreme Court's adjuration. The point is that an ordinance should not be interpreted in such a way as to give the permitting authority the discretion to manipulate *any interests* governed by the First Amendment—whether they be speech, association, religion or any other.[7]

We need not produce an Alexandrian Solution to this knot, however, because even if we could adopt the City's interpretation of the ordinance, we would nonetheless be required to reverse the trial court's order denying the writ.

### III

Ultimately, the determinative issue here is Madain's assertion he *attempted* to file his permit application on December 2, 2008, along with the tenant improvement plans originally accepted by the City on that date. Madain claims the city's employee who assisted him at that time refused his proffer

---

[7] Madain asserts that if mere "acceptance" of a filing constitutes the requisite city action necessary to establish priority under the sensitive use ordinance, then he should be accorded priority based upon the City's *acceptance* of his tenant improvement plans on December 2, 2008. The argument has some surface appeal, but the priority to be established is between the anticipated *uses* of the respected properties, not their structure or décor. Madain establishes his intended *use* of his property by filing a specific application to operate an adult-oriented business. Only then would the City be required to commence its official consideration of whether there are conflicting uses within 300 feet of the property.

of the application, telling him Dadabhoy would first consider the tenant improvement plans and get back to him. It was not until two weeks later that Dadabhoy himself returned the tenant improvement plans, with a letter acknowledging they should never have been accepted until Madain's adult-oriented business application had been "submitted and approved." In the meantime, the church had submitted its own application for a permit, thus gaining priority over Madain's as-yet unfiled application.

This assertion raises significant issues. First, as Madain contends, it calls forth the spectre of city employees intentionally manipulating events to assist the church in gaining priority over Madain's proposed adult cabaret. Of course, one of the city's employees denied to the city council that Madain had actually tried to submit his application on that December 2 visit, but that denial merely created a dispute of fact, which the City should then have resolved as part of its determination of priority in the submission of applications.

Unfortunately, the point is completely omitted from the City's findings. And while the City argues we should infer a finding adverse to Madain's claim, based upon the City's express determination that Madain actually filed his application "on January 6, 2009," we cannot. As Madain points out, there is no dispute he *actually* filed his application on January 6, but that determination is in no way inconsistent with the inference that he *attempted* to file it on the earlier date.

Our way is lit by *Sierra Club v. City of Hayward, supra*, 28 Cal.3d at page 859. There, our Supreme Court flatly refused to infer necessary administrative findings in a case where the record contained no evidence that a city council had actually addressed the issue in question: "[I]n this case we do not know, and cannot ascertain from a review of the evidence, whether or not the city council [made the required findings]. . . . Nor is the presence in the record of scattered and contradictory evidence [relating to the issue] sufficient to satisfy us that the council made a deliberate determination of the issue. Indeed, even the existence of substantial evidence to support a necessary determination would not compel a conclusion that the determination was in fact made. The substantial evidence test compels courts only to sustain existing findings supported by such evidence, not to hypothesize new findings. [Citation.]"

In this case, as in *Sierra Club*, there is simply no indication the City considered Madain's contention he had attempted to file his application on December 2, 2008. The issue is an important one, because if the city council concluded that Madain did attempt to file his permit application before the date the church filed its own, but the city's employee hindered his effort without good cause, then the city council should have treated Madain's application as though it were filed that day.

The second issue raised by Madain's contention is one of omission, rather than deliberate manipulation. If, as reflected in Dadabhoy's December 18, 2008 letter to Madain, the City *could not consider* his tenant improvement plans until his application to operate an adult-oriented business was "submitted and approved," why did no one tell him so when he filed those plans on December 2, 2008? And what would have happened if someone had? According to Madain, his adult-oriented business application had already been filled out and dated as of the day before he filed the tenant improvement plans, and if that's true (and even assuming he did not actually *attempt* to file that application on Dec. 2, 2008), he would presumably have been able to file it immediately had anyone informed him of the City's procedures at that time.

■ The City's procedures for processing licensing applications should not operate as a trap for the unwary and, where its ordinances establish a priority among competing uses for a specific area, it must give all applicants an equal opportunity to join the line. We cannot tell if that was done here. In the absence of specific factual findings pertaining to Madain's claim that he had prepared his adult-oriented business application for filing on December 1, 2008, was prepared to file it with his tenant improvement plans on December 2, 2008, and actually attempted to do so, we cannot tell whether the City acted fairly in determining that the church was entitled to sensitive use priority over Madain's proposed cabaret. Consequently, we conclude the city council abused its discretion by failing to make such findings.

## DISPOSITION

The superior court's order denying Madain's petition for writ of mandate is reversed, and the case is remanded to the superior court with directions to issue a writ of mandamus requiring the City to vacate its denial of Madain's permit application and to reconsider the matter, including Madain's contention he was ready to file his adult-oriented business application on December 2, 2008. Appellant is to recover his costs on this appeal.

Sills, P. J., and Aronson, J., concurred.

**SILLS, P. J.,** Concurring.—I agree with and have signed the majority opinion. I write separately, however, to point out the interesting problem in land use law on which this case ultimately centers:

First, over this past decade churches and congregations have increasingly chosen to hold services in industrial parks. A small body of case law, of

which today's opinion now becomes a part, has grown out of that trend.[1] A federal statute also looms over such efforts, the Religious Land Use and Institutionalized Persons Act of 2000, often called RLUIPA. (42 U.S.C. § 2000cc et seq.)

Second, however, industrial parks also happen to be among the best places to locate adult businesses. (E.g., *Gammoh v. City of Anaheim* (1999) 73 Cal.App.4th 186, 189 [86 Cal.Rptr.2d 194] ["The plaintiff . . . leased property in an industrial section of Anaheim just off the Riverside Freeway . . . . In his reply brief he describes the area as a 'God-forsaken industrial wasteland.' "]; see generally *Renton v. Playtime Theatres, Inc.* (1986) 475 U.S. 41, 47 [89 L.Ed.2d 29, 106 S.Ct. 925] [emphasizing power of cities to use zoning rules to minimize "secondary effects" of adult businesses].)

Industrial parks are well suited for adult businesses because they are generally removed from places where *children* are likely to congregate. Places like housing tracts, schools, parks and . . . .

Churches. Or at least industrial parks used to be removed from churches.

Let me suggest that part of the problem is semantic. The English word "church" is ambiguous. The Oxford English Dictionary's definition of "church" goes on for no less than three full pages and 11 columns of fine print. (3 Oxford English Dict. (2d ed. 1989) pp. 199–203.) The first definition refers to a *building*.[2] An example might be, "there's a Methodist church on the corner of First and Main, and a Catholic church about two blocks north on Main." The second definition, however, is more abstract, referring to a

---

[1] E.g., *International Church of Foursquare Gospel v. City of San Leandro* (N.D.Cal. 2008) 632 F.Supp.2d 925, 930 (noting that church found larger property located within an industrial park zoning district); *Grace Church of North County v. City of San Diego* (S.D.Cal. 2008) 555 F.Supp.2d 1126, 1130–1131 (recounting efforts of a nondenominational church to find space, first in a public high school, then it looked for a "property that had not been rented for some time and that had no viable short term prospects for new tenants" and found three sites within a local industrial park, one of which was "occupied by another religious institution preparing to move" and the third was "leased to a synagogue"); *Western New York Dist., Inc. of Wesleyan Church v. Village of Lancaster* (N.Y.Sup.Ct. 2007) 17 Misc.3d 798 [841 N.Y.S.2d 740, 743–744] ("On February 27, 2007, the Church and its parent organization entered into a contract to purchase a parcel of land and industrial building owned by Sherex Industries, Inc. in the Village Industrial Park."); *Petra Presbyterian Church v. Village of Northbrook* (N.D.Ill. 2006) 409 F.Supp.2d 1001, 1003 ("For the past ten years, Petra has been searching for a building of its own. Unable to find an existing church for sale in the right place and at the right price, in 2000 Petra settled on property in Northbrook's Sky Harbor Industrial Park. Petra planned to convert an existing office building and warehouse into a church.").

[2] After a very long introduction about the derivation of the word, the Oxford lists as its first definition, "I. The building, the Lord's house [¶] 1. a. A building for public Christian worship." (3 Oxford English Dict., *supra*, p. 200.)

*group*, say a congregation or community or organization, not necessarily tethered to any given physical location.[3] The Greek word "ecclesia," from which we get the churchy word "ecclesiastical," was originally used to describe the Athenian democratic assembly. An example of the word "church" in this latter sense might be, and here I quote directly from Judge Huff's opinion in the *Grace Church* case,[4] "For several years, beginning around the summer of 1997, the church met at Rancho Bernardo High School" (*Grace Church of North County v. City of San Diego, supra*, 555 F.Supp.2d at p. 1129.) The "church" referred to in the *Grace Church* opinion was obviously *not* the high school; it was a group of people temporarily meeting *at* the high school.

The ambiguity in the word "church" is at the center of the case before us. The problem is, Stanton's ordinance (a "planned church" or, tracking the statute, a planned "religious institution"[5]) crunches both meanings: The ordinance seems tailored for churches, religious institutions and "place[s] of worship" in the brick-and-mortar sense. (Stanton Mun. Code, § 20.38.024, subd. A.1.b.) The idea is, don't put an adult business close to where children might go to Sunday school.

Okay. It clearly makes sense to restrict adult businesses from areas which are an intrinsic draw for children. A permanent church *building* (e.g., St. Anthony's Catholic Church on First and Main) may have a Sunday-school class, and have regularly organized youth groups other days of the week.

But the ordinance in this sense also seems to be spilling over into the more abstract, organizational sense of the word. Thus, in the case before us, the Branches Christian Church is able to pop up in any given "storefront," proposing worship services as a "designated" use.

It makes far less sense, however, to restrict adult institutions from the one place in most urban areas where they are likely to have the *least* secondary effects—those beige satanic mills known as industrial parks. One imagines that most fleshly palaces of sin, like the proposed Avalon Show Girls, are not likely to be open for business on Sunday mornings.

---

[3] "II. The (or a) Christian community, and its ecclesiastical organization." (3 Oxford English Dict., *supra*, p. 200.)

[4] See footnote 1, *ante.*

[5] "Institution," alas, suffers from the same ambiguity as the word church: The Smithsonian Institution is a real brick-and-mortar place. But one could just as easily write, say, that "the Catholic Church is the dominant institution on the island."

Astute readers of the majority opinion may have noticed that part II (maj. opn., *ante*, at pp. 1286–1288) is dicta. It is not necessary for today's decision, because part III proposes a self-contained rationale for our decision to reverse and remand.

That said, I think the dicta is correct under the facts of this case and given this particular record. As I read part II, it endorses the rule that, as between the putatively two mutually incompatible land uses of (1) worship services and (2) "adult" entertainment,[6] the side which gets to the window first with a permit application has priority, at least as long as the winner of the race to the window ultimately receives the permit and the city processes that permit in reasonable time and in good faith.

Qualifications to the rule are necessary because it doesn't take much imagination—some of the alleged facts of this case are a good example—to recognize that a first-to-the-window rule might be "gamed," perhaps by sham permit applications. If one way of keeping a pool hall out of River City is for the local First Anti-Billiard Church to open up a "storefront" auxiliary nearby, there is a tremendous temptation to file a permit application as a preemptive strike.

I must also register two cautionary notes as regards traditional land use law. The first is that the majority opinion should most definitely not be read for the proposition that something is "planned" just because someone applied for a permit for that something. That idea conflicts with the edifice of California land use law (see generally Gov. Code, § 65800 et seq.) which contemplates formal adoption of general plans and zoning laws by cities and counties.

The second cautionary note is along the same lines. This case should be limited to its facts. There may be land use issues lurking beneath the surface here which may have some bearing later in the remanded proceedings. For example, we don't have the city's general plan before us, and we cannot tell here to what degree the ordinance in question may operate as a de facto amendment to that plan. (Leaving aside, of course, the know-it-when-I-see-it problem of defining just precisely what an "adult-oriented business" is.)

---

[6] This is not ancient Samaria, where the two uses were often thought quite compatible indeed.

It is enough here that the syntax of Stanton's ordinance is not limited to traditional city plans and zoning ordinances. This ordinance also refers to places of worship "otherwise designated for such use." (Stanton Mun. Code, § 20.38.024, subd. A.1.b.) Under the facts of this case and appeal, for such "otherwise" designations, the first-to-the-window dicta in part II seems the best we can do at this stage of the proceedings.