Filed 6/17/14  Madian v. City of Stanton CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MUSA MADAIN,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>CITY OF STANTON,<br><br>     Defendant and Respondent. | G047717<br><br>(Super. Ct. No. 30-2009-00119013) |
| MUSA MADAIN,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>CITY OF STANTON et al.,<br><br>     Defendants and Respondents. | G048323<br><br>(Super. Ct. No. 30-2012-00582698)<br><br>O P I N I O N |

Appeals from an order and a judgment of the Superior Court of Orange County, David R. Chaffee and Geoffrey T. Glass, Judges, respectively. Appeal from order dismissed. Judgment affirmed in part and reversed in part.

Wellman and Warren, Scott Wellman and Stuart Miller for Plaintiff and Appellant.

Best Best & Krieger, Jeffrey V. Dunn and Thomas J. Eastmond for Defendants and Respondents.

*       *       *

In this sequel to *Madain v. City of Stanton* (2010) 185 Cal.App.4th 1277 (*Madain I*), we learn that this court's concern, expressed in that opinion, about the city not giving two competing applicants an "equal opportunity" to obtain permits to operate in a particular industrial-commercial section of the city (*id*. at p. 1290) turned out to be well founded. After our decision, the matter was committed by the city itself to a retired appellate court justice from another district to make findings of fact on the issue of which of the two applicants really applied first. The retired justice determined that plaintiff Musa Madain had effectively joined the queue before the competing applicant, the Branches Christian Church. The retired justice further found the city had manipulated its "sensitive use" ordinance to give priority to the church over Madain, who proposed to open an adult entertainment business. After the retired justice's decision, plaintiff Madain was indeed able to obtain his sought-after permit, but only after a year of bureaucratic delay and nit-picking. *This* appeal centers on Madain's quest for damages resulting from the delays he encountered on the way to success in obtaining his permit.

We arrive at a variegated decision on the two appeals before us. The first appeal arises out of the very same trial court action that came to us in *Madain I*, trial court docket number 30-2009-00119013, our docket number G047717. Technically, this first appeal is from an order denying Madain's motion to amend his original petition filed in *Madain I*. It must be dismissed because, as the city correctly intuits, the order

2

appealed from is nonappealable. However, the *reason* it is nonappealable is not because – as as the city asserts – it is a *post*judgment order that neither adds to nor subtracts anything from a final judgment, but because it is a *pre*judgment order filed before any final judgment has been entered. As we explain below, there is as yet *no* final judgment in *Madain I*. So this first appeal, G047717 is, ironically enough, premature rather than late.

The second appeal arises out of a second action filed by Madain, trial court docket number 30-2012-00582698, this one in July 2012, more than two years after our June 2010 decision in *Madain I*. This appeal – our docket number G048323 – arises out of a sustained demurrer to Madain's first amended complaint in that action. As to this appeal, we conclude: To the degree Madain seeks any damages pursuant to *state* law under section 1095 of the Code of Civil Procedure,[1] the demurrer was properly sustained, because section 1095 is trumped by two sections of the Government Code (§ 818.4 and § 821.2) which specifically preclude a litigant from obtaining damages in connection with the issuance of a permit. But to the degree Madain seeks damages pursuant to section 1983 of title 42 of the United States Code[2] for any delays after *Madain I*, he has stated sufficient facts to show that the city manager and the city development manager, acting on their own, may have been purposefully delaying Madain's application in order to discourage the opening of his business altogether. That part of the lawsuit is procedurally sound. But he has alleged no facts showing a city policy to delay his business and therefore the judgment of dismissal *as to the city itself* is otherwise affirmed.

## FACTS

A good starting point precedes our opinion in *Madain I*. In 2008, the city of Stanton had a "sensitive use ordinance" which precluded adult cabarets from operating

---

[1]     All further references to "section 1095" are to the California Code of Civil Procedure.
[2]     All further references to "section 1983" are to Title 42 of the United States Code.

3

within 300 feet of a "planned" church. (*Madain I, supra,* 185 Cal.App.4th at p. 1283.) In late 2008, Madain sought to open an adult cabaret in Stanton. (*Id.* at p. 1280.) He had prepared both tenant improvement plans and a formal application for a permit to operate an adult cabaret, and, *he said*, he tried to file both the application and the tenant improvement plans on December 2, 2008. However – again according to Madain – he was told that day by "the city employee at the front desk" that she would only take the tenant improvement plans at that time, and the city's planning manager would look at those plans and then contact him. (*Id.* at pp. 1280-1281.) Madain left without formally filing his prepared application.

The next day, December 3 – again, in Madain's view – a city employee contacted the Branches Christian Church, and apparently told the church to hurry up and file its own application to operate in another part of the same industrial park area (*Madain I, supra*, 185 Cal.App.4th at pp. 1290-1291 (conc. opn. of Sills, P. J.) of the city. (See *id.* at p. 1281 (maj. opn.).) The church filed its application five days after the contact, December 8, 2008. It took another 10 days after the church's December 8 application for the city manager to contact Madain. Specifically, on December 18, 2008, the city manager returned the tenant improvements plans which the unnamed city employee had allowed Madain to file on December 2, 2008, and informed him his project would not proceed until he filed an application. (*Id.* at p. 1281.)

Madain filed his application on January 6, 2009. That application was denied by letter about a week later, on January 14, 2009, because the proposed place of operation was within 300 feet of a "planned 'religious institution.'" (*Madain I, supra*, 185 Cal.App.4th at p. 1280.) Madain then appealed the denial of the permit to the city council. On February 10, 2009, the city council heard evidence on the application. The city found that because the church's application was filed prior to Madain's, the permit had to be denied under the city's sensitive use ordinance. (*Id.* at p. 1283.)

4

On February 23, 2009, Madain filed a petition for writs of mandate and administrative mandate. The petition alleged Madain's side of the story: He was going to file a formal application on December 2, 2008, but the city – for no good reason – declined to accept it, allowing the church to get in its application on December 8, before Madain could file his. (See also *Madain I, supra*, 185 Cal.App.4th at p. 1290.) Madain asserted the city had "violated" his "First and Fourteenth Amendment free speech rights and has been and is causing [him] irreparable damage and also damages for the delay." The text of Madain's petition specifically mentioned section 1983, albeit only in the context of asserting a right to attorney fees. A "crawl"[3] described the document as a whole as a "Petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 and Title 42 United States Code, section 1983." The petition prayed for "damages according to proof" and attorney fees, but its prayer did not specify the basis for any damages claim. Nor was there any specific request for damages based on delay qua delay.

The trial court ruled on Madain's petition April 10, 2009. The court denied the petition, holding the church had applied first, the application was sufficient to establish a "'planned'" church under the sensitive use ordinance, and Madain's subsequent application was properly denied because his adult use was contemplated within 300 feet of that church. As we later noted in *Madain I*, the trial court did *not* analyze Madain's argument that the city had "failed to make findings" on the question of whether it had "'conspired'" to prevent his application on December 2, 2008, concluding such arguments were "'ancillary'" and "'*irrelevant*'" (italics in the original) to his petition. (*Madain I, supra*, 185 Cal.App.4th at p. 1285.) Madain then timely appealed from the May 2009 judgment denying his petition, and in June 2010, this court issued its opinion.

---

3     That is, a running subheading appearing on line 28 on normal 28-line pleading paper that does not appear to be part of the text but rather is put there to describe the document itself.

5

In *Madain I*, we concluded the determinative issue was Madain's assertion he attempted to file his permit application on December 2, 2008, noting the assertion raised the "spectre of city employees intentionally manipulating events to assist the church in gaining priority over Madain's proposed adult cabaret." (*Madain I, supra*, 185 Cal.App.4th at p. 1289.) We further noted the city itself asserted Madain had *not* attempted to file an application on December 2, 2008. We concluded the city's assertion created a dispute of fact as whether Madain had, or had not, attempted to file an application that day. (*Ibid.*)

And because it was a dispute of fact, we made no determination as to whether or not Madain had attempted to file his application on December 2, 2008. We could not tell if the city had manipulated events to trap Madain, and concluded we needed specific factual findings on the question of whether Madain had attempted to file an application on December 2, but was prevented from doing so. (*Madain I, supra*, 185 Cal.App.4th at p. 1290.) We reversed the trial court's order denying the writ of mandate, but further required the court *not* to grant the petition, but to issue a writ requiring the city to reconsider the matter, specifically including the question of whether Madain had attempted to file on December 2. (*Ibid*.)

We now pick up the story after *Madain I* was filed on June 23, 2010. The city did not petition the Supreme Court for review, but did file a depublication request in mid-August. Opposition was filed to that request on August 23.[4] On August 27, 2010 – while the depublication request was still pending in the California Supreme Court – the trial court issued a "judgment." This document mostly tracked the disposition of our opinion in *Madain I*. It set aside the May 2009 judgment, and ordered the city to set aside its February 10 decision denying Madain's permit and to "reconsider" his application.

___

[4]     We take judicial notice of the public docket of the California Supreme Court showing what was filed in this case at that court.

6

We say "mostly" tracked, because the August 27, 2010 trial court judgment gave Madain something inherent in, but not made explicit by, the disposition of our opinion in *Madain I* – namely the possibility that, instead of the city itself making the necessary findings of fact, it might be done by a neutral decision maker. The August 27, 2010 judgment thus directed the city to have the hearing "conducted by impartial and neutral members of the City Council or a hearing officer to be appointed by the City." Moreover, the hearing was to be limited to events of December 2, 2008, including "the conduct of City staff" regarding that application. The August 27 judgment also stated: "After the new hearing and decision by the City Council of the City of Stanton, the matter may, at the request of either party, be restored to the calendar of the Superior Court." A writ was to issue in conformity with the judgment.

The city's formal return to the writ directed to be issued by the August 27, 2010 judgment disclosed that the city and Madain had agreed a retired appellate court justice, the Honorable Michael Nott, would make factual findings regarding the events of December 2, 2008. Both parties agreed they would be bound by Justice Nott's findings. The response further recited that Justice Nott had already heard the matter on November 11, but had not yet issued his findings. The city promised that it would "promptly take action consistent" with his findings when he did issue them.

Justice Nott issued his decision December 30, 2010. He had heard testimony from a number of witnesses, including the city planning manager Omar Dadabhoy, Madain himself, and a planning department employee named Kelly Scott. Justice Nott found Madain credible, and concluded, as a matter of fact, that Madain had indeed offered to file an application on December 2, 2008, but Scott told him it was not necessary to file an application at that time. Justice Nott further found that had the application been accepted, Madain's application would have predated the application filed by the Branches Christian Church. Justice Nott also found Dadabhoy took an unreasonable amount of time (16 days) to notify Madain an application needed to be

7

filed. And he further observed that Scott's statement she had told Madain it was not necessary to file an application in order to have tenant improvement plans approved was in direct conflict with a letter the city manager wrote to Madain dated December 18, which said the application had to be filed before any tenant improvement plans could be filed. Justice Nott summed up his conclusion with the statement that "in sum, the hearing officer is of the opinion that intentionally or unintentionally, Madain was unfairly treated by the City."

That brings us to 2011. For purposes of this case, almost the entirety of 2011 was taken up with the process of Madain submitting tenant improvement plans to the city, and the city returning them for correction of various supposed deficiencies which, at least for purposes of demurrer, can perhaps best be described with the word "minutiae." The record contains no less than *six* separate "screen checks," which on their face appear to be itemizations of various physical details, or even merely the *descriptions of* physical details, requiring correction. All these screen checks were in the form of correspondence on city stationary signed either by Carol Jacobs, "City Manager" or Omar Dadabhoy, "Community Development Director."[5]

Regulations promulgated by the city pursuant to its adult-oriented business license ordinance in the Stanton Municipal Code provide that it is the city manager who "shall investigate" any adult-oriented use application, and further provide that the city manager is to grant the license within 20 days after the application is filed unless the city manager finds the business does not comply with some provision in the municipal code.

Given the procedural posture of this case (as the party responding to a demurrer, Madain gets the benefit of the doubt, not the city) we express no opinion on the merits of these correction requests, except to note Madain stated in a declaration that a number of them were brought up at later stages in the process than necessary. According

---

[5] These letters are part of a motion in trial court docket number 30-2009-00119013 case, which Madain made in January 2012 to compel the city council to immediately issue his requested permit.

8

to Madain (we need not opine on the merits of the point) the requests were nothing more than nit-picking.

On January 11, 2012, just a few weeks after the fifth screen check had been sent to Madain in December 2011, and before the final, sixth, screen check would be sent out on January 17, Madain brought a motion in the trial court to require the city to immediately issue him a permit. The hearing was scheduled for February 10, 2012, but, on January 26, the city's planning division gave its approval to his plans. Madain, arguing against the city's position that his motion was by then moot, asserted that he had requested the city to hire an independent company to oversee the approval process, a request that had been accepted, but only after the city had "road blocked the project at every turn" during the previous year.

The motion went off calendar on February 10. The record discloses no further activity in the *Madain I* case until some five months later, on July 11, 2012. At that point, Madain's business was about to open. With new counsel, he took the step of filing a motion for leave to file an amended petition to assert a request for some $3 million in delay damages, and add two individuals, Dadabhoy and Jacobs, to the petition. New material to be added to the petition included a statement that pursuant to both section 1095 and section 1983 Madain was entitled to recover damages from the city for its delay going back to late 2008.

The same day (July 11, 2012) Madain filed a new action (trial court docket number 30-2012-00582698, or "*Madain II*" as the parties call in the briefs) which was a straight-on "complaint for damages pursuant to CCP § 1095." This original complaint centered on the "litany" of "stall tactics" allegedly engaged in by the city in 2011, but does not contain any reference to section 1983. (That would soon change.)

Meanwhile, in *Madain I*, Madain's motion for leave to file an amended petition was denied in a minute order authored by the trial judge then assigned to the case, Judge David Chaffee, dated October 25, 2012. The thrust of the minute order was

9

that because our opinion in *Madain I* did not mention the issue of damages, no damages could be recovered thereafter.[6]  In response to the point that the issue of damages was premature in the wake of *Madain I*, the minute order reasoned that under section 1095 damages was "not an issue that can be brought up after damages has [*sic*] been entered." The court furthered reasoned that section 1095 requires any damages determination "take place in one proceeding."

The minute order said:  "As written, the Judgment is construed as resolving all issues.  Reopening a Judgment and purporting to continue the case and permit further proceedings is in excess of the court's jurisdiction.  *Delmuto v. Superior Court* (1932) 119 Cal.App. 590, 595.  Therefore, amendment at this juncture can't occur."  The judge further concluded the language in the judgment (apparently referring to the August 27, 2010 judgment) saying the case could be restored to civil calendar "[p]erhaps" applied to motions concerning the costs memo or attorney's fees, but "the issues of damages were resolved."[7]

Judge Chaffee added that damages incurred since the original writ petition (trial court docket number 30-2009-00119013, or *Madain I*) could not be a part of the existing judgment.  Rather, those damages were the subject of an "entirely new action." The same went for the two individuals to be named in the amended petition, Dadabhoy and Jacobs, given that there were no "Doe" allegations in the original petition. Moreover, the delay as to those individuals was "unexplained and prejudicial."

---

6    We quote the salient portion of the minute order:
"The Court of Appeal Opinion did not include any consideration of, or reference to, damages.  The Court's order denying the writ of mandate was reversed but the directions were limited to 'issue a writ of mandamus requiring the City to vacate its denial of Mandain's [*sic*] permit application and reconsider the matter, including Mandain's [*sic*] contention he was ready to file his adult-oriented business application on December 2, 2008. Appellant to recover his costs on appeal.'  This order formed the basis of the Court's Judgment, which did not refer to damages."

7    He elaborated at the end of the minute order:  "Judgment was entered in this case on 08/27/10. Damages were not included in the Judgment and were not included in the Court of Appeal's opinion.  The Judgment disposes of all issues of the Petition.  Therefore, there is no Petition remaining to amend."

10

The battle then shifted to the new action (trial docket number 2698, aka *Madain II*), with the city's demurrer filed in mid-November. The city argued the new action was barred by res judicata, at least for those damages incurred up to the judgment in *Madain I*, barred by the six-month Government Tort claims statute of limitations (with the accrual beginning December 2, 2008), and in any event precluded by the statutory immunity for permit delay under Government Code section 821.2.

Meanwhile, back on the *Madain I* front, Madain filed a notice of appeal from the October 25, 2012 minute order, denying the motion to amend the original petition in *Madain I*. This is the G047717 docket number appeal referenced in our caption.

Before the demurrer in *Madain II* could be heard, Madain filed a first amended complaint. Unlike the original, this one did include an explicit request for damages under the federal statute, section 1983. This amended pleading included as individual defendants city planning manager Dadabhoy, city manager Jacobs, and Kelly Scott.

The first amended complaint pled alternative theories regarding the actions of the individual defendants. On the one hand, the first amended complaint asserted that the city was the "'moving force'" behind the deprivation of Madain's equal protection, due process and free speech rights as detailed in the obstacles he had faced from the city. On the other hand, it asserted that Dadabhoy, Jacobs and Scott were "rogue municipal employees" who had used their positions at city hall to violate Madain's civil rights.[8]

---

[8] The first amended complaint does not use the phrase "official policy" to describe the city's various attempts to stop or otherwise delay Madain's business, instead saying the city was the "moving force" behind those attempts. The "moving force" image is derived from *Kentucky v. Graham* (1985) 473 U.S. 159, 166. That passage reads in pertinent part: "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. . . . More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation . . . ."

11

Beyond the general allegation of rogueness, however, the complaint does not explain *how* Dadabhoy, Jacobs and Scott delayed Madain's permit.

The city demurred again, arguing Madain's delay claims were barred by res judicata by virtue of a final judgment in *Madain I*. The city also asserted that various statutes of limitations, statutory immunity, and lack of any allegation the delay was a result of "official policy" or "action or ratification by an official with final policy-making authority" or "custom or practice allowing or condoning the action" all precluded any liability on any defendant's part. The demurrer also noted that Madain had pled mutually exclusive theories of liability as to the city on the one hand and the three individual defendants on the other.

The demurrer was sustained in late February 2013 in a minute order made by the new judge assigned to the case, Geoffrey Glass. However, the denial was with leave to amend. The minute order said it was unclear who Madain was suing on various section 1983 causes of action, though it "appear[ed]" Madain was suing Stanton on a respondeat superior theory." But, said the trial judge, respondeat superior clearly does not apply to section 1983 causes of action. Likewise, he concluded that Madain had failed to "identify the 'official policy' that caused the individual defendants to violate the constitution." The judge further noted the fifth, sixth and seventh causes of action "are completely contradictory to the allegations in the rest of the complaint."[9]

Rather than amend, Madain stipulated to dismissal of *Madain II* in early April 2013, then filed a notice of appeal from the order of dismissal almost immediately after. A month later, on May 3, 2013, a formal judgment of dismissal was entered, curing the technical prematurity of Madain's mid-April notice of appeal.

---

[9]     As drafted, Madain has listed three section 1983 causes of action, corresponding to free speech, equal protection and due process.

12

DISCUSSION

A. *The First Appeal:  Madain I* (G047717).  *Dismissed*

Each party sees the appeal from the order of October 12, 2012 differently.
For Madain, the first appeal is from a postjudgment order which raises issues *different
from* those addressed in the underlying judgment.  For the city, the first appeal is from a
postjudgment order that merely raises the *same* issues already disposed of in an
underlying final judgment.

We don't agree with either analysis.  Both rely on an erroneous premise.
The "judgment" of August 27, 2010, was *not* a final, appealable judgment.  That
document clearly left issues for further consideration beyond mere compliance.  "'As a
general test, which must be adapted to the particular circumstances of the individual case,
it may be said that where no issue is left for future consideration except the fact of
compliance or noncompliance with the terms of the first decree, that decree is final, but
where anything further in the nature of judicial action on the part of the court is essential
to a final determination of the rights of the parties, the decree is interlocutory.'"  (*Griset
v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698; see also Eisenberg et al.,
Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2013) ¶ 2:37, p. 2-24
["The general test of finality focuses on whether and to what extent issues remain to be
decided in the lower court case . . . ."].)

We may identify at least two issues the judgment of August 27, 2010, left
for future consideration.  One was the request for a permit itself.  Madain's original
petition prayed for an injunction that the city be "ordered to grant" him "the adult
oriented business license that [he was] seeking."  The judgment of this court in *Madain I*,
did not give him that relief, but nor did it deny it to him.  All it did was give him *a
hearing* on the factual question which might – or, just as easily, might not – have
overcome a *threshold* obstacle as one step in a *process* which *might* result in his
obtaining the "license [he was] seeking."  The trial court's judgment of August 27, 2010

13

– no proceedings in the trial court had occurred in the interim since our June 2010 opinion – merely tracked the limited relief Madain had obtained in this court, ordering the city "to set aside its decision of February 10, 2009 and to reconsider [Madain's] petition for the adult oriented business license."  Manifestly, achieving reconsideration of a step in the process of making a request is not the same as being entitled to what is requested.  Accordingly, the August 27, 2010 judgment expressly stated that after the "new hearing and decision" by the city, "the matter may, at the request of either party, be restored to the calendar of the Superior Court."

But there was at least one other issue – not even counting Madain's specific request for attorney fees under federal law made in the original petition:  damages.  Both the text of the petition and its prayer sought damages.  And, similar to Madain's request for a permit itself, the issue of damages was contingent on Madain's *first* obtaining his permit.

In other words, under the no-issue-left-for-future consideration" standard of *Griset*, on August 27, 2010, there were miles to go in this case before there could be a final resolution of the issue of whether Madain would receive – or not receive – the license he was seeking, or any damages incurred in the process.

The fact the August 27, 2010 "judgment" was labeled a "judgment" is not determinative.  Regardless of the label, it is the substance of the document which determines whether it is a final judgment for purposes of appeal.  (*Jackson v. Wells Fargo Bank* (1997) 54 Cal.App.4th 240, 244 ["The record in the court below does indeed contain a document entitled 'Final Judgment,' but it is patently no such thing by the very terms of the stipulation pursuant to which it was filed.  It is clear that no effect can or should be given to such a label if the judgment does not *in fact* conclude matters between the parties."]; see also *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 666 ["'substance and effect of the court's order or judgment and not the label which determines whether the party can appeal."].)  In substance, the "judgment" of August 27,

14

2010, was nothing more than an interlocutory order in the process of a yet-to-be-made determination of whether Madain would obtain a final judgment giving him his permit and adjudicating his entitlement to any damages incurred in the process of his quest for permit.

The trial judge relied on three opinions to deny Madain's amendment request on the theory the August 27, 2010 "judgment" was by then final. All three hail from a time when it did not require the better part of an afternoon to digest an appellate opinion. None is longer than a couple of pages. None affects our analysis.

*Gould v. Moss* (1910) 158 Cal. 548 stands – at most – for the idea that a claim for *costs* does not fall within the category of an issue left for further consideration in an otherwise final judgment. (See *Kaufman v. Pacific Indem. Co.* (1936) 5 Cal.2d 761, 769 ["Under the authority of *Gould v. Moss* . . . where a judgment which does not carry costs has become final, whether correct or not, a defendant cannot be held for costs."].) The original petition in *Madain I* still has *issues* to be adjudicated – not costs – and is thus not analogous to the final judgment in *Gould*.

*Beatty v. Clark Colony Water Co.* (1915) 28 Cal.App. 752 (really, *Beatty III*[10]) stands for the proposition that if a plaintiff has to obtain a writ of mandate to force the defendant to do an act and is thereby entitled to damages, it is an error for an

---

[10] The *Beatty* case actually consists three opinions, all short and all issued in close succession in the first series of the California Appellate Reports: *Beatty v. Clark Colony Water Co.* (1915) 28 Cal.App. 745 (*Beatty I*); *Beatty v. Clark Colony Water Co.* (1915) 28 Cal.App. 749 (*Beatty II*) and *Beatty v. Clark Colony Water Co., supra,* 28 Cal.App. 752 (*Beatty III*). Basically, a couple who owned land in Monterey County sued their water company for water, and obtained a judgment requiring the company to deliver it to them. (*Beatty I, supra*, 28 Cal.App. at p. 748.) The water company appealed from "that portion of the judgment" providing for the delivery of water, arguing it wasn't obligated to supply the water. (*Id*. at pp. 747-749.) The water company lost, the relevant portion of the judgment was affirmed. That was *Beatty I*.

The water company also filed a separate appeal from an order denying a motion for new trial (and also from the judgment), apparently arguing that the judgment included a lot which was not otherwise owned by the plaintiffs. The water company succeeded in obtaining a modification of the judgment to the degree it erroneously included that lot. (*Beatty II, supra*, 28 Cal.App. at p. 750.) That was *Beatty II*.

Finally, the plaintiffs filed their own, separate appeal from that "portion" of the same judgment which declined to award them damages. (*Beatty III, supra*, 28 Cal.App. at pp. 752-753.) The court held that the "undisputed evidence" entitled them to damages for past delay on the water company's part, and therefore "that portion" of the judgment should be reversed to let them try their damages issue "anew." (*Id.* at p. 753.) That was *Beatty III*, which is the case the trial judge here mentioned in his minute order.

15

*otherwise* final judgment not to include a provision for damages, and that omission is grounds for reversal in a timely appeal by the plaintiff from that judgment. (See *id*. at p. 753.) *Beatty III* does not affect this case because it arose out of a judgment which provided for the plaintiffs to obtain a writ of mandate giving them the substantive relief they sought – an order that a water company deliver water to them – but which erroneously omitted to address their request for damages as a result of the water company's past failure to deliver water to them. That omission was redressed in a successful appeal by the plaintiffs from the "portion" of the judgment from which they appealed. (*Ibid*.) The August 27, 2010 judgment in the case before us, by contrast, did not give Madain the substantive relief he sought. It only gave him the further opportunity to pursue that relief. Therefore it cannot be assumed that the damages issue was *necessarily* included in the August 27, 2010 judgment. It wasn't. By August 2010, it hadn't been established that Madain was entitled to any substantive relief sought in original petition, because it remained possible the city might prevail on its factual assertion that Madain *didn't* try to file his application on December 2, 2008.

Finally, *Delmuto v. Superior Court* (1932) 119 Cal.App. 590, merely determines a long final judgment in an automobile accident case cannot be reopened to make a defendant held expressly not liable in the original judgment liable in a modified judgment. *Delmuto* is inapt here because there the long final judgment clearly left no issues for future consideration, it just got one of those issues (the liability of a negligent minor participating in a race) wrong.[11] *Delmuto* cannot be read, as the trial judge read it here, for the idea that our decision in *Madain I necessarily* "resolv[ed] all issues." As we

---

[11]     *Delmuto* involved three young automobile drivers who were racing each other. One was injured and sued the other two. The case went to trial, with the judge finding that the racer who was a minor was negligent; the other racer, not a minor, was not. The judgment, however, only provided that the plaintiff take damages from the defendant minor's *mother*, and, inexplicably, expressly provided that the plaintiff take nothing as against the minor himself. Three years after the judgment became final – in the depths of the Great Depression – the plaintiff sought to amend the court's conclusions of law to reopen the case against the minor. And the trial court granted his request. The Court of Appeal had little difficulty concluding the order was in excess of the trial court's jurisdiction. (*Delmuto, supra*, 119 Cal.App. at pp. 594-595.)

16

said, it didn't. *Madain I* did not even reach the main issue of substantive relief sought in Madain's original pleading.

So what are we to make of the order of October 25, 2012, denying the request to amend the original petition? This is where it gets complicated.

An order denying a request to amend a pleading *prior* to a final judgment is itself not appealable *unless* the order has the effect of eliminating all issues, so there is nothing left to be tried or determined. (*Figueroa v. Northridge Hospital Medical Center* (2005) 134 Cal.App.4th 10, 12; *Haro v. City of Rosemead* (2009) 174 Cal.App.4th 1067, 1078; *Ingram v. Superior Court* (1979) 98 Cal.App.3d 483, 489 ["Although an order denying leave to amend a complaint is not an appealable order . . . when such orders have the effect of eliminating issues between a plaintiff and defendant so that nothing is left to be determined, the order is a final judgment and is appealable."].)

Here, the order of October 25, 2012 certainly did not *eliminate* any issues between Madain and the City of Stanton. Even assuming, for sake of argument, that the question of Madain's underlying right to a permit had already been eliminated because it was moot (since he already received his permit back in January of the same year), the issue of damages still remained. We hadn't resolved that issue in *Madain I* – to repeat, because we couldn't. And beyond damages, the issue of attorney fees remained as well.

In substance then, the August 27, 2010 "judgment" and the October 25, 2012 denial order were both interlocutory and not appealable. (See *Lyon v. Goss* (1942) 19 Cal.2d 659, 670 [where something "further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory"].)

Madain has not, in his briefing, requested we treat the appeal from the October 25, 2012 order as a de facto writ petition, but counsel mentioned our ability to treat it as such at oral argument. Unfortunately, case law is clear that this power should be reserved for "unusual" cases. (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96

17

Cal.App.4th 1357, 1366-1367.) While every case is unique, not every case is unusual – at least not in the way envisioned in *Arnaiz*. Since Madain did not make a formal request in his briefing that would have explained how his case called for the unusual remedy he alluded to at argument and allowed the city to respond to it, we decline to treat his appeal as a de facto writ petition. The good news for the city is that the appeal in G047717 must therefore be dismissed. The bad news for the city is that *Madain I* remains a case where the issue of damages and attorney fees have not yet been adjudicated, and in which there is yet no final judgment. Further proceedings will be required before the case can be laid to rest.

B. *The Second Appeal:  Madain II* (G048323). *Split Decision.*

*Madain II* is a different matter. Procedurally it is much cleaner. Given the judgment of dismissal filed May 3, 2013, there is no doubt about appealability. We have a straightforward case of a sustained demurrer where the plaintiff elected not to amend, eliminating all issues between the parties, and thus presenting a cleanly appealable judgment.

Preliminarily, it is important to recognize that Madain has alleged alternative, and indeed inconsistent, theories as to the origins of the delays he has encountered. And, indeed, that is his right under California law. As the court said in *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402:  "When a pleader is in doubt about what actually occurred or what can be established by the evidence, the modern practice allows that party to plead in the alternative and make inconsistent allegations." (Accord, *Adams v. Paul* (1995) 11 Cal.4th 583, 593 ["a party may plead in the alternative and may make inconsistent allegations"].) Thus he has alleged that *either* the delays were the result of rogue city employees acting on their own, *or* as the result of a deliberate city effort which was the "moving force" behind those delays.

The city raises a number of valid points which have the effect of winnowing down Madain's delay claim to a bare minimum. First, we note the city's

18

statutory immunity argument is a correct one as to state law. All state law delay claims are based on section 1095, which provides for damages for a successful litigant seeking a writ of administrate mandate. But section 1095 is, when it comes to delay damages incurred in obtaining land use permits, in direct conflict with Government Code sections 818.4 and 821.2. Those two statutes effectively insulate public entities and public employees from liability for failure to issue permits. Case law squarely holds the two Government Code sections trump the more general Civil Procedure Code section. (See *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 804 [observing "imposing liability on the authority of Code of Civil Procedure section 1095 would be tantamount to a repeal of sections 818.4 and 821.2]; *O'Hagan v. Board of Zoning Adjustment* (1974) 38 Cal.App.3d 722, 728 ["In essence, Code of Civil Procedure, section 1095, provides that if the petitioner for mandamus recovers judgment, he may also recover damages which he has sustained and that such damages shall be recovered and awarded against the public entity represented by such officer but not against the officer. This is, of course, in direct conflict with the applicable provisions of the Tort Claims Act which provide a clear-cut immunity for discretionary acts in general . . . and for licensing activities in particular . . . . For the reasons which follow we resolve the conflict in favor of the Tort Claims Act, and hold that the immunity provisions of the act must be given effect over the damage provisions of Code of Civil Procedure, section 1095."].)

The state immunity provisions, of course, cannot affect federal civil rights claims under section 1983. (See *Williams v. Horvath* (1976) 16 Cal.3d 834, 841-842 [federal civil rights claims may not be frustrated by state substantive limitations "couched in procedural language"].) So, we must now turn to the city's statute of limitations argument as it applies to section 1983 claims.

As a matter of federal law, section 1983 carries the same statute of limitations as the state personal injury statute of limitations in the state where the alleged

19

civil rights violation occurred. "The United States Supreme Court has held that an action brought pursuant to . . . section 1983 is a personal injury action, and that the appropriate statute of limitations is the statute of limitations for personal injury causes of action in the particular state in which the case is filed." (See *Jackson v. Cedars-Sinai Medical Center* (1990) 220 Cal.App.3d 1315, 1323.) The current state personal injury statute of limitations is within two years of the injury-causing wrongful act. (Code Civ. Proc., § 335.1.)

As to the statute of limitations, any "delay" injuries caused either by the city, or arguendo by any employees going "rogue," must be divided, as Judge Chaffee noted in his minute order, into two separate categories: (1) the delay attendant on the initial denial of Madain's permit application on February 10, 2009, as set out in the facts in *Madain I*, and (2) the delay attendant on any unreasonableness in the city's processing of Madain's tenant improvement and application in the year 2011, in the aftermath of our decision in *Madain I*.

As to the first period, the statute of limitations has already run. *Madain II* was filed in July 2012. The delay attendant on the denial of Madain's application occurred in February 2009 – more than three years previously. The city, we would also observe, had every right to use legal process to defend its decision in the courts afterward, so that period of delay certainly cannot be charged to it. (See generally *Manta Management Corp. v. City of San Bernardino* (2008) 43 Cal.4th 400, 408 [city's seeking preliminary injunction against operation of an adult cabaret and later an appellate stay after the dissolution of the preliminary injunction were not acts for which city could be held responsible].) And Madain has proffered no argument on appeal that the time consumed in the appellate proceeding that resulted in *Madain I* tolls the two-year statute of limitations as a matter of federal law under section 1983. Accordingly, we conclude that all section 1983 claims set forth in *Madain II* that derive from the city's February 2009 denial of his permit are precluded by the statute of limitations.

20

That leaves only the second period of delay – caused by the alleged nitpicking of tenant improvement plans in the year 2011 – as a statute of limitations issue. We may observe at this point that a city's *unreasonable* bureaucratic delay in processing a benefit to which a litigant is otherwise entitled can indeed be the basis of a valid section 1983 claim for violation of due process rights. (See *Kraebel v. New York City Department of Housing Preservation and Development* (2d Cir. 1992) 959 F.2d 395, 405.[12]).) We cannot see why the same rule would not also apply to a business permit as to which an applicant may claim first amendment protection. And, since *Madain II* was filed well within two years of 2011, claims based on the second period of delay survive a statute of limitations challenge.

We now consider the city's main argument, and the one that primarily animated the trial court's sustaining of the city's demurrer, namely that Madain has not alleged that the delay in 2011 was part of some city "policy" to discourage adult businesses by the device of unreasonable processing of tenant improvement minutiae – the "death of a thousand screen checks approach" to killing an undesired land use.

The "policy" argument derives from *Monell v. Department of Social Services* (1978) 436 U.S. 658. The late Justice Crosby cogently observed in *Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 328-329 that "*Monell* doctrine 'has produced a body of law that is neither readily understood nor easy to apply' . . . . If there

---

[12]　*Kraebel* presents a fairly close parallel with this case on the point of whether bureaucratic nit-picking and repetitive review can trigger a viable section 1983 claim. The case involved a landlord who undertook extensive voluntary and, for her, costly improvements to her apartment building in reliance on a city program that promised her property tax breaks in return. (*Kraebel, supra*, 959 F.2d at p. 398.) But to gain the tax breaks, the landlord had to submit applications for tax exemptions and abatements. Those applications were "subjected to repetitive reviews by numerous people, several of whom demanded further documentation that was not even required" by the regulations promulgated in connection with the city program. (*Id*. at p. 398.) It took the city a year and half to process her applications. (*Ibid*.) The appellate court reversed the district court's federal rule 12(b)(6) dismissal of her due process claim, stating "due process requires that eligibility for a variety of benefits be processed within a reasonable time" (*id*. at p. 405) because "'implicit in the conferral of an entitlement is a further entitlement to receive the entitlement within a reasonable time.'" (*Ibid*., quoting *Schroeder v. City of Chicago* (7th Cir. 1991) 927 F.2d 957, 960.) The court further held that while delay is natural with an administrative bureaucracy, there was "at least a question of fact as to whether these delays were egregious and without rational justification." (*Kraebel, supra,* 959 F.2d at p. 405.)

is any pattern to *Monell* decisional law, it is a crazy quilt." However, for our purposes, we can distill *Monell* into one sentence: Local governments are not liable under section 1983 pursuant to the classic doctrine of respondeat superior; local governments can only be held liable if the civil rights violation is the result of city policy, custom, or practice.

That much seems clear. But again, we are forced to make separate analyses, this time because of the mutually exclusive alternative allegations made in the complaint. The complaint alleges, as one alternative scenario, that three city employees, Dadabhoy, Jacobs and Scott, acting on their own, caused the delays in obtaining the permit, including those occurring during the city's allegedly unreasonable bureaucratic processing of tenant improvement plans in 2011. The *Monell* policy argument has no force as to these three, since they are alleged to have violated Madain's rights on their own. And individual city employees can indeed be held liable under section 1983 for their own conduct under color of state law. (E.g., *Starr v. Baca* (9th Cir. 2011) 652 F.3d 1202, 1207-1208 [county sheriff could be individually liable for deliberate indifference to brutality to prisoners in county jail by subordinates].) The city's argument that any attempt to hold the three individuals liable is res judicata fails because *Madain I* is *not* res judicata, since there is no final judgment in it yet.

However, as to at least one of the three individual defendants, Kelly Scott, there is a problem of insufficient facts alleged to show she did *anything* in 2011 which had anything to do with the case. Mere conclusions are *not* sufficient to state a section 1983 claim. (See *Kennedy v. H & M Landing, Inc.* (9th Cir. 1976) 529 F.2d 987, 989 ["A pleading will not be sufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions."].) Neither the first amended complaint, nor the 2011 screen check letters (trial court docket number 30-2009-00119013), of which we may take judicial notice (for purposes of the case of trial court docket number 30-2012-00582698), mention her in any way, and we cannot find evidence or theory to support a section 1983 claim against her.

22

We cannot, however, say the same about Jacobs and Dadabhoy, whose fingerprints are all over the allegedly unnecessarily repetitive screen check letters. Is enough alleged to say *they* were going "rogue"? It is true that the Stanton Municipal Code delegated to the city manager the power to deny an adult-oriented business application upon a determination the application in some way does not comply with some part of the city's municipal code. But that delegation does not allow us to say, at the demurrer stage, that *necessarily* Jacobs or Dadabhoy were acting pursuant to city policy in sending out those repetitive screen checks and not pursuant to some personal agenda.

After all, the city manager is not the highest decision-making authority on the denial. It is the Stanton city council that has the highest decision-making authority on the issuance of adult-oriented business permits. From that fact it follows – apologies for the double negative – that we cannot say the delays of 2011 were *necessarily not* the product of some personal agendas on the part of Jacobs or Dadabhoy or both. (See *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1298;[13] *Gernetzke v. Kenosha Unified School Dist. No. 1* (7th Cir. 2001) 274 F.3d 464, 468-469 [issue turns on whether "the decisionmaker" was "at the apex of authority for the action in question."].) So the demurrer, as it applied to any section 1983 claims, should not have been sustained as to them.

But that coin, which exposes Dadabhoy and Jacobs to liability, has a flip side that benefits the city itself: There just isn't enough by way of factual allegations to show they were acting according to city policy.

To be sure, section 1983 claims can be predicated on *unwritten* policies. (See *Johnson v. California* (2005) 543 U.S. 499 [strict scrutiny governed prisoner's section 1983 challenge to unwritten policy of California prisons to racially segregate

---

[13]     As the *Harmon* case explains, while municipalities may be on the hook under section 1983 for delegating policy-making authority to a particular official, that authority must both relate to policy and be final. (*Harmon, supra*, 136 Cal.App.4th at p. 1298.)

23

prisoners when they enter a new facility]; *Wanger v. Bonner* (5th Cir. 1980) 621 F.2d 675 [sheriff liable under section 1983 for unwritten policies regarding night searches of homes].) But, if they are, the unwritten policy must be a permanent and well-settled one. (See *City of St. Louis v. Praprotnik* (1988) 485 U.S. 112, 127 ["Relying on the language of § 1983, the court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'"].)

Here, nothing in the record – and certainly nothing factually alleged in the first amended complaint – can be said to constitute an unwritten policy on the part of the city to deter adult businesses by nit-picking tenant improvement plans. No communications to that effect are alleged to have gone from the city council to the city planning department.

It must be remembered, in this regard, that neither the first amended complaint nor anything in the record indicates that any *unreasonable* screen checks or returns of applications in 2011 were anything other than Jacobs' and Dadabhoy's own personal interpretations of the city's adult business ordinance that Madain might have *immediately* corrected by appealing to the city's ultimate decision maker, the city council. Madain gives us no reason to doubt that *at any time during 2011 after the first screen check* he might have immediately asked the city council for relief if he perceived that the city manager was engaged in the stalling tactic of micro-scrutinizing his tenant improvement plans. There are no allegations, for example, that the city council authorized, encouraged, or even condoned the alleged death-by-screen-check tactics of the city planning department in 2011.

Finally, it is not enough for Madain to allege that the city was the "moving force" behind any delays he encountered by bureaucratic pettifoggery. "Moving force" is a different element in *Monell* analysis than the existence of a policy, custom or practice.

24

A section 1983 claimant must allege both the existence of a policy and that the policy was the moving force behind the employee's violation of the claimant's civil rights. (See *Dougherty v. City of Covina* (9th Cir. 2011) 654 F.3d 892, 900 ["A government entity may not be held liable under . . . § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. . . . In order to establish liability for governmental entities under Monell, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'"].) Here, we may have moving force, but where's the policy?

## DISPOSITION

The appeal in G047717 is dismissed as premature. There is as yet no final judgment in that case. The judgment appealed from G048293 is affirmed entirely except insofar as it dismisses any section 1983 claims against Jacobs and Dadabhoy. Each party is to bear its own costs on appeal in this consolidated proceeding.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.

25